*Filed in County Court*
*City & County of Denver, Colorado*

*NOV 2 2 2021*

## DENVER DISTRICT COURT

1437 Bannock Street, Room 135
Denver, CO 80202

| | | | |
|---|---|---|---|
| PLAINTIFF(S): | Travis T. Bedore | ) | Case Number: |
| | P.O. Box 372065 | ) | |
| | Denver, CO 80237 | ) | |
| | | | |
| DEFENDANT(S): | NATIONSTAR MORTGAGE LLC, | | |
| | d/b/a MR. COOPER, | | |
| | 8950 Cypress Waters Boulevard | | |
| | Coppell, TX 75019 | | |
| | 888-480-2432 | | |

---

## COMPLAINT FOR RELIEF, REDRESS, AND A PERMANENT INJUNCTION

---

1.      Travis T. Bedore, the Plaintiff, brings this complaint against Nationstar

Mortgage LLC, d/b/a Mr. Cooper ("Nationstar" or "Defendant") under Sections 1054 and

1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § § 5564

and 5565.  Nationstar is one of the largest mortgage servicers in the United States.

Nationstar violated multiple federal consumer financial protection laws, causing

substantial harm to the Plaintiff.  During the servicing of the loan, Nationstar has: 1)

failed to timely remove private mortgage insurance "PMI" from the Plaintiff's account; 2)

failed to properly conduct escrow analysis for the Plaintiff during the bankruptcy

proceedings; 3) failed to recognize the loss mitigation plan;  4)  committed multiple acts

of breach of contract; 5) violated the Colorado Consumer Protection Act by engaging in unfair and deceptive practices. Each of these acts violated the law.

2.      The Plaintiff brings this action against Nationstar under: (1) Sections 1031 and 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § § 5531, 5536; (2) Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § § 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. § § 1024 et seq. ("RESPA Mortgage Servicing Rule"); and (3) Sections 4902(a) and (b) of the Homeowners Protection Act of 1998, 12 U.S.C. § § 4902(a) and 4902(b) ("HPA"); the Colorado Consumer Protection Act ("CCPA"), C.R.S. 6-1-101.

3.      The Plaintiff brings this action to obtain injunction relief and remove Private Mortgage Insurance "PMI" from the loan; remedy Defendant's unlawful conduct; pay redress to the Plaintiff; and impose civil money penalties against Defendant.

## JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over this action because the Plaintiff's house is located in the city and county of Denver, Colorado. Further, this action is brought under federal consumer law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by a citizen of the United States, 28 U.S.C. § 1345.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because the Defendant conducts business in this district and the events giving rise to the claims occurred in this district.

6.      This action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et. seq, (RESPA), and The Truth in Lending Act, 15 U.S.C. § 1640(e) (TILA). This action is filed to enforce regulation promulgated by the Consumer Financial Protection Bureau (CFPB) 12 C.F.R. § 1024 et seq. of Regulation X and 12 C.F.R. § 1026.41 of Regulation Z.

7.      This Court also has jurisdiction under 15 U.S.C. § 1692k(d) of the Fair Debt Collection Practices Act (FDCPA).  This Court has supplemental jurisdiction to hear any and all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

### PLAINTIFF

8.      The Plaintiff is the borrower who has his mortgage loan serviced by Nationstar d/b/a Mr. Cooper - Defendant.  The Plaintiff's dwelling is located in Denver, CO.  The Plaintiff has been severely impacted by the unlawful RESPA, CFPA, HPA, CCPA, TILA, and Breach of Contract violations committed by the Defendant.

3

## **DEFENDANT**

9.      Nationstar is a Delaware limited liability company with its headquarters located in Coppell, Texas.  Mr. Cooper is the current or most recent name under which Nationstar does business. Nationstar engages in mortgage servicing by, among other things, processing borrower payments.  Nationstar has done business in this District and throughout the United States.

10.     Defendant is a "covered person" pursuant to 12 U.S.C. §  5481(6) because it offers and provides consumer financial services, which includes "extending credit and servicing loans" and "collecting debt" related to such loans, as defined under CFPA, 12 U.S.C. § § 5481(15)(A)(i) and (x).

11.     For the purpose of RESPA, a servicer is a person "responsible for servicing of a loan." 12 U.S.C.  § 2605(i)(2). Under RESPA, "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of the loan." 12 U.S.C.(i)(3).

12.     Defendant is subject to RESPA as a mortgage servicer of federally related mortgage loans.

13.     Defendant must adhere to Colorado HB1282 - Nonbank Mortgage Servicing Act under article 21 which extends to any person engaging in servicing a residential mortgage loan secured by a dwelling or residential real property located in the state of Colorado.

## FACTUAL ALLEGATIONS

### Company Background

14.     Defendant is one of the largest mortgage servicers in the United States and services millions of loans per year.

15.     Defendant has a practice of aggressively acquiring mortgage servicing rights for many loans that were subject to trial loan modifications or loans that had been modified by the prior servicer.

16.     Defendant allegedly violated the rights of many of the loans they acquired. By example: 1) unlawfully foreclosing on borrowers who entered into a modification program; 2) increased the mortgage payments on the permanently modified loans; 3) mismanaged borrower's escrowed accounts.

5

**Defendant Mishandled the Plaintiff's Private Mortgage Insurance.**

17.     Generally, a borrower is required to purchase Private Mortgage Insurance "PMI" when they obtain a mortgage with a downpayment that is less than twenty percent of the home's purchase price.

18.     Pursuant to the Homeowners Protection Act ("HPA") servicers are required to remove PMI:

(1) Automatic Termination.  Servicer must automatically terminate a borrower's PMI on the loan's termination date. This is the date in which the principle balance of the mortgage is first scheduled to reach 78 percent loan-to-value ("LTV"), or, if the borrower is not current as of the termination date, the first day of the month after the borrower becomes current on the loan; and

(2) Borrower-Requested Cancellation.  Servicers must cancel a borrower's PMI upon receipt of a borrower's written request on the loan's "cancellation date," which is the date when the LTV is scheduled to reach 80% of the original value of the property, or the date on which the principle balance of the loan reaches 80% of the original value of the property based on actual payments.

19.     The Plaintiff's loan was scheduled to reach 80% of the original value of the property on 9-1-2008.  During this period, the original mortgage lender / servicer HSBC removed PMI from the loan.  However, PMI has wrongfully been re-added to the loan. Further, the date that the loan was scheduled for "Automatic Termination" was 3-1-2010.

20.     The Defendant's position is that the Plaintiff's house must have a LTV of 70% instead of the contractually agreed upon 80% and 78% stated in the loan documents.  The Defendant states that the Plaintiff's loan amount is $167,180.78 and the property must have an appraisal value of $238,829.69.

21.     The Plaintiff submitted, on July 5, 2021, a Comparative Market Analysis Broker Opinion by the licensed real estate brokerage *Denver Premier Real Estate* indicating that the market value of the property is $462,721. Thus, the approximate current LTV on the house is thirty-six percent (36%).  The Defendant still refuses to remove the PMI monthly charges from the mortgage payments and states that they believe the house to be an investment property.  Therefore, they are not required to follow the HPA nor honor contract law.

**Defendant is in violation of the "cancellation date" which is defined as:**

(1) With respect to a fixed rate mortgage:  Based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for

7

that mortgage on that date, is first scheduled to reach 80 percent of the original value of the property securing the loan; or based solely on actual payments, reaches 80 percent of the original value of the property securing the loan.

22.     Defendant's failure to remove PMI - the current LTV is approximately 36 percent - is a violation of 12 U.S.C. § 4902(a) and CFPA 12 U.S.C. § 5536(a)(1)(A).

23.     Servicers are required to automatically terminate a borrower's private mortgage insurance when the borrower's loan reaches the "termination date."  12 U.S.C. § 4902(b).

The "termination date" is:

(1) The date on which the principal balance on a fixed rate mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage date, is first scheduled to reach 78 percent of the original value of the property securing the loan. In the case of the Plaintiff's loan: This date was contractually set for 3-1-2010.

24.     Defendant's failure to terminate PMI premiums is in violation of 12 U.S.C. § 4902(b) and CFPA 12 U.S.C. § 5536(a)(1)(A).

8

25.     This action stems from an unjust scheme undertaken by the Defendant to maximize profits by failing to notify the Plaintiff about his option to cancel the PMI being charged on his loan when the loan was eligible. As a result, the Plaintiff collected and continues to collect massive amounts of monthly PMI fees that are unearned, fraudulent, excessive, unfair, deceptive, false, fictitious, and illegal.

26.     Rather than earn income from the interest on loans, financial institutions like Mr. Cooper are paid a fee for their loan administration services and they retain, as profits, additional fees generated.  For example, a portion of the PMI fees being collected from the Plaintiff are viewed as profit for the Defendant.

27.     The Homeowners Protection Act ("HPA") mandates that while PMI is in place on the borrower's loan, the lender and mortgage servicers must provide annual written statements of the borrower's rights under HPA regarding the PMI cancellation or termination.  § 12 U.S.C. 4903(a)(3).

28.     Once the borrower's loan balance reaches eighty percent of the property value, PMI is no longer needed and should be cancelled automatically by the lender.

29.     The Homeowners Protection Act ("HPA") under 12 U.S.C. 4901 et seq. governs when PMI must be terminated or cancelled and when the lender must send notices to the borrower.  The HPA is largely a disclosure statute mandating disclosure to

inform borrowers when PMI can be cancelled and when it must be automatically terminated.

30.     The implementation of HPA is used to provide consumers with the protection they deserve from unscrupulous lenders such as Mr. Cooper.

31.     The Defendant purposely failed to provide annual disclosures to the Plaintiff in order to collect unearned and unnecessary monthly premiums.

32.     The Defendant misrepresented and continues to misrepresent these fraudulent PMI fees on the monthly mortgage statements as if the loan does not qualify for PMI cancellation.

33.     The Plaintiff has submitted both written and verbal requests in hopes of having the PMI removed from his monthly statements.  The Plaintiff has also provided a professional Broker's Opinion from the licensed real estate brokerage *Denver Premier Real Estate* indicating that the market value of the property is $462,721. Using this value, the Plaintiff currently has a LTV of thirty-six percent.  Further, using the Defendant's one property valuation software, which can be found on their website, the Plaintiff's LTV also comes in around 36% LTV.

34.     The Defendant has profited and continues to profit handsomely from their scheme at the expense of the Plaintiff.

35.     The Defendant, after learning about impending litigation, has tried to impede the Plaintiff's ability to make payments.  The Defendant blocked the Plaintiff from making his mortgage payments online or through the Mr. Cooper App.  Further, the Plaintiff had to make several calls and speak with multiple Mr. Cooper customer service representatives who were all unwilling to accept his mortgage payment.  Finally, after hours on the phone, a supervisor named Tina agreed to accept his payment.  This was most likely a strategy used by the Defendant to try and force the Plaintiff into delinquency.

## **VIOLATIONS OF THE CFPA**

36.     Sections 1031 and 1036 (a)(1)(B) of the CFPA, 12 U.S.C. § § 5531 and 5536(a)(1)(B), prohibit covered persons from engaging "in any unfair, deceptive, or abusive act or practice."

### **Count I**

### *(Deceptive Statements Regarding PMI Cancellation)*

37.     A representation, omission, or practice is deceptive under CFPA when it is likely to deceive a consumer acting reasonably under the circumstances, and where the representation, omission, or practice is material.

11

38.     The Defendant represented that a borrower must reach 70% LTV on their mortgage in order to request cancellation of their PMI.  The Defendant must honor the original loan documents – not alter them at their convenience.  The original loan documents state that PMI can be canceled once the LTV reaches 80%.  Forcing the Plaintiff into adhering to new terms, which were never agreed to, constitutes Fraud by definition.

39.     HPA requires otherwise eligible borrowers to reach 80% LTV on their mortgages in order to request cancellation of their PMI.

40.     The Plaintiff is current and in good standing on his mortgage payments. He has a LTV of 36% and has repeatedly requested that the PMI charges be removed from his monthly statements.  The Defendant refuses to remove these charges.

41.     The Plaintiff was entitled to reasonably rely on the express representation of the servicer.  At acquisition, the Defendant was responsible to audit the Plaintiff's loan and inherit the debts, liabilities, and responsibilities associated with the loan.

42.     Defendant's statements in regards to their not being obligated to follow HPA nor contractual law were deceptive and in violation of Sections 1031 and 1036 of the CFPA.  12 U.S.C. 5531(a) and 5536(a)(1)(B).

## VIOLATIONS OF RESPA

### Count II

*(Didn't acknowledge the Broker Opinion in a timely manner)*

43.     "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing loans and assignments of those loans." Catalar v. GMAC Mort Cort. 629 F 3d 676, 680 (7th Cir 2011).

44.     Section 2605 (e) entitles, "Duty of loan servicer to respond to borrower inquiries," provides that:

If the servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action taken within such period.

The statute further provides that:

Not later than 30 days.... after the receipt from any borrower of any qualified written request.... before taking any action with respect to the inquiry of the borrower, the servicer shall:

(A) make appropriate corrections in the account of the borrower... and transmit to the borrower a written notification of such correction....

(B) After conducting an investigation, provide the borrower with a written explanation or clarification that includes:

> (i)  to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

45.     The Plaintiff submitted, on July 5, 2021,  a broker's opinion from a Colorado licenced real estate broker - *Denver Premier Real Estate* - stating that the Plaintiff's house is valued at $462,721 which would make the LTV approximately 36 percent.

46.     The Defendant has the broker's opinion in their possession, yet refuses to remove the PMI charges nor explain why they will not remove the PMI charges.

**Count III**

(Misleading and False Statements and Communication with the Plaintiff)

14

47.     The Defendant has stated that the LTV must be 70% for them to remove the PMI.  However, there is nothing in the contractual agreement between the Plaintiff and Defendant that can substantiate this demand.  Further, the current LTV is 36 percent – which is far lower than the contractually agreed upon LTV of eighty percent LTV.

**Count IV**

*(Defendant Charged a Fee that Lacked Basis to Impose)*

48.     RESPA and its implementing regulation, Regulation X, pertain to certain acts and practices related to "federally related mortgage loans" including servicer requirements related to notice of error and complaint resolution.

49.     The Plaintiff's loan is a federally regulated loan.

50.     Section 17 of Regulation X requires servicers to conduct annual escrow analysis for borrowers, 12 C.F.R. § 1024.17(c)(3) and (f)(1).

51.     The Defendant failed to conduct timely escrow analysis of the Plaintiff's loan and violated 12 C.F.R. § 1024.17(c)(3) and (f)(1).

52.     These violations also constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## **VIOLATIONS OF THE HPA**

### **Count V**

### (Failure to Cancel PMI on Plaintiff's Request)

53.     Under the HPA, servicers are required to cancel a requirement for private mortgage insurance on a specific date called the "cancellation date." 12 U.S.C. § 4902(a).

54.     The "cancellation date," as defined by HPA, 12 U.S.C. § 4901(2), means:

With respect to a fixed rate mortgage, at the option of the mortgagor, the date on which the principle balance of the mortgage:

(1) Based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for the mortgage on that date, is first scheduled to reach 80 percent of the original value of the property securing the loan; or

(2) Based solely on actual payments, first reaches 80 percent of the original value of the property securing the loan.

55.     The Defendant failed to cancel private mortgage insurance of borrowers 12 U.S.C. § 4902(a).

**Count VI**

*(Failure to Terminate PMI Automatically)*

56.     Under the HPA, servicers are required to automatically terminate a borrower's private mortgage insurance when the borrower's loan reaches its "termination date."  12 U.S.C.  § 4902 (b).

57.     The "termination date," as defined by the HPA, 12 U.S.C. § 4901(18), means:

> (A)     With respect to a fixed rate mortgage, the date on which the principle balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.

58.     These violations also constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

59.     The Defendant failed to automatically terminate the Plaintiff's private mortgage insurance when the Plaintiff's loan reached its "termination date."  12 U.S.C. § 4902(b).

60.    The "termination date," as defined by HPA, 12 U.S.C. § 4901(18), means:

(A)    With respect to a fixed rate mortgage, the date on which the principle balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.

61.    The Defendant failed to maintain accurate termination dates for the Plaintiff. Therefore, the Defendant overcharged the Plaintiff for unnecessary PMI premiums in violation of 12 U.S.C. § 4902(b).

62.    These violations also constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## BREACH OF CONTRACT

### Count VII

*(Breach of Contract)*

63.    A breach of contact is a violation of any of the agreed-upon terms and conditions of a binding contact. The Defendant failed to uphold the terms agreed to in the mortgage closing documents and promissory note.

64.     Plaintiff entered into a standard loan agreement that typically provides *inter alia* that Defendant may charge for fees or services performed for the purpose of protecting the lender's interest in the property and rights under this Security Instrument.

65.     The service fees must be used for the purpose of protecting the lender's interest in the property - not for generating fees for the lender.

66.     The charges must also be used for services that were necessary.

67.     Defendant breached the mortgage agreement by assessing fees against the Plaintiff for PMI services that were not necessary and subject to cancellation.

68.     As a result of this breach of contract Defendant has caused and continues to cause injury to the Plaintiff.

69.     Defendant also breached its duty of good faith and fair dealing by assessing fees that were and are still currently unwarranted and unnecessary.

## UNJUST ENRICHMENT

### Count VIII

*(Unjust Enrichment)*

70.     The Defendant kept and continues to keep the Plaintiff's PMI payments even though the Plaintiff's PMI payments should have been cancelled.

71.     At all relevant times, the Defendant knew the Plaintiff's PMI was subject to cancellation but still collected PMI fees.  Such fees are not necessary to protect or defend the mortgage agreement.

72.     As a result of its actions, Defendant was unjustly enriched to the extent that it wrongfully collected and continues to collect PMI fees after the cancellation date and criteria have been met.  PMI is an unnecessary expense at the cost of the Plaintiff.

73.     It would be inequitable and unconscionable for the Defendant to retain the profit, benefit, and unjust compensation it obtained from its fraudulent, deceptive, and misleading conduct.

74.     As a result, the Plaintiff is entitled to actual damages, compensatory damages, punitive damages, and reasonable fees and costs.

75.     Plaintiff is entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breach of contractual obligations.

## **NEGLIGENCE**

### **Count IX**

*(Negligence)*

76.     The Defendant had a duty to notify the Plaintiff that his PMI was subject to cancellation and to cancel his PMI accordingly.  The Defendant negligently collected unnecessary and unwarranted PMI fees.

77.     The Defendant breached that duty by failing to notify, collecting unnecessary PMI fees, and assessing the Plaintiff's loan for unwarranted and unnecessary fees.

78.     The Defendant refuses to honor the contract and continues to charge, month after month, unnecessary and unwarranted PMI fees.  The Plaintiff has submitted requests (both written and verbal) to have the PMI removed from his loan.

79.     The Defendant submitted, on July 5 of 2021, a broker's opinion from a Colorado licenced real estate broker - *Denver Premier Real Estate* - stating that the

Plaintiff's house is valued at $462,721 which would make the LTV approximately 36 percent.

80.     As a result, the Plaintiff is entitled to actual damages, compensatory damages, punitive damages, statutory damages, and reasonable fees and costs.

## **VIOLATIONS OF THE CCPA**

### **Count X**

(Deceptive and Unfair Conduct)

81.     The Defendant violated C.R.S. 6-1-101 by engaging in an unfair and deceptive act by using fraud, deception, and misrepresentation in their attempts to collect unauthorized fees or charges from the Plaintiff.

82.     Defendants' unfair and deceptive conduct is immoral, unethical, unscrupulous, and oppressive in that the Defendant is in a position of strength in relation to the Plaintiff.

83.     The Colorado Consumer Protection Act is a statutory scheme used to help any person who suffers actual damages as a result of a violation of the act committed by any other person. The CCPA is a legislature intended to deter and punish businesses who engage in unfair and deceptive trade practices with the public.

84.     As explained in the above paragraph, Plaintiff has been and continues to be harmed by Defendants' unfair and deceptive practices in the form of fees, costs, and charges, that have been wrongfully added to his mortgage account.

85.     Therefore, Plaintiff is entitled to relief and up to treble damages, cost, and fee in pursuant to the CCPA.

**Prayer for Relief**

In pursuant to sections 1054 and 1055 of the CFPA, 12 U.S.C.§ § 5564 and 5565, the Plaintiff would request:

1. This court to demand that the Defendant cease all violations of the CFPA, RESPA, HPA, TILA, and CCPA, and enter such other injunctive relief as appropriate;

2. Award relief that the Court finds necessary to redress injury caused to the Plaintiff - including but not limited to: refund of moneys, restitution, payment of damages or other monetary relief;

3. Award relief to disgorge Defendant of unlawful gains;

4. Award civil money penalties against the Defendant;

5. Award punitive and compensatory damages;

6. Award costs against the Defendant; and

7. Award additional relief as the Court may deem just and proper.

Respectfully,

Travis T. Bedore
Pro Se

11-22-21
Date

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the **COMPLAINT FOR RELIEF, REDRESS, AND A PERMANENT INJUNCTION** dated_____, were served by placing the same in the United States Mail, first class postage prepaid to the following:


Mr. Cooper
Customer Relations
P.O. Box 619098
Dallas, TX 75281-9741

NATIONSTAR MORTGAGE LLC,
d/b/a MR. COOPER,
8950 Cypress Waters Boulevard
Coppell, TX 75019

Corporate Service Company
Attn:  Nationstar Mortgage, LLC
1900 W. Littleton Boulevard
Littleton, CO 80120



Travis T. Bedore                                    Date

# How to Access Virtual Court

## Via Telephone

Please use the below steps to access your virtual court date via telephone. You can also click <u>here</u> to watch a short video tutorial.

**APPEARING VIRTUALLY VIA TELEPHONE**



- Listen to the proceedings
- Speak on the record

 Please use the table on this flyer to locate your courtroom, and the corresponding **Conference Phone Number** and **Conference ID Number.**



**COURTROOM PHONE NUMBERS / ID NUMBERS**

Example:

| Courtroom | Phone Number | Conference ID |
|-----------|--------------|---------------|
| 12R | 720-555-5555 | 123 456 789# |

 To attend your virtual court date, call the phone number listed.

 You will then be prompted to enter the Conference ID number. Enter the number on your phone.

| Courtroom | Phone Number | Conference ID |
|-----------|--------------|---------------|
| Clerk's Office | 720-865-7840 | N/A |
| Parking | 720-913-5300 | N/A |
| 170 (Civil) | 720-600-4350 | 608 643 14# |
| 175 (Civil) | 720-600-4350 | 802 816 979# |
| 186 (Civil) | 720-600-4350 | 114 870 14# |
| Civil Returns | 720-600-4350 | 177 756 212# |
| 159 (Protection Orders) | 720-600-4350 | 920 413 766# |
| 117 (Small Claims) | 720-600-4350 | 778 889 172# |
| 100 (Traffic) | 720-600-4350 | 239 581 060# |
| 105 (Traffic) | 720-600-4350 | 984 237 572# |
| 104 (Traffic) | 720-600-4350 | 415 880 630# |
| Juvenile Docket | 720-600-4350 | 825 601 730# |
| 104B (Wellness/ Sobriety Court) | 720-600-4350 | 264 265 172# |

**Note:** if you wish to keep your phone number private, you can press *67 before dialing the courtroom phone number.

Upon entering the conference ID number, you will join virtual court and can:

# How to Access
# Virtual Court

# Via Smartphone or Computer

Please use the below steps to access your virtual court date via smartphone or computer. You can also click here to watch a short video tutorial.

**APPEARING VIRTUALLY WITH VIDEO (SMARTPHONE OR COMPUTER)**



Prior to your court date, download the Microsoft Teams Application to your smartphone or computer.

Use the table below to locate your courtroom and the corresponding Microsoft Teams Link.

| Courtroom | Link |
|---|---|
| Clerk's Office | Click here |
| Parking (720-913-5300) | Call for appointment |
| 170 | https://bit.ly/dcc-170 |
| 175 | https://bit.ly/dcc-175 |
| 186 | https://bit.ly/dcc-186 |
| Civil Returns | https://bit.ly/dcc-civilreturns |
| 159 (Protection Orders) | https://bit.ly/dcc-159 |
| 117 (Small Claims) | https://bit.ly/dcc-117 |
| 100 (Traffic) | https://bit.ly/dcc-100 |
| 105 (Traffic) | https://bit.ly/dcc-105 |
| 104 (Traffic) | https://bit.ly/dcc-104 |
| Juvenile Docket | http://bit.ly/dcc-104jv |
| 104B (Wellness/Sobriety Court) | https://bit.ly/dcc-104s |

To attend your virtual court date, **click the link or type/paste the link into your internet browser.**

Clicking the link will launch your Microsoft Teams App on your smartphone or computer and ask if you wish to **Join Now**.

**Smartphone**          **Computer**




When you join, your camera and microphone will start in the **"off"** position. To turn them on, simply click on the video/microphone icons.

During the session, you can tap/mouse the center of your screen at any point to open the **toolbar**. You can use the toolbar to turn your **camera and microphone on/off, control volume, and exit.**



Travis T. Bedore
P.O. Box 372065
Denver, Co 80237





Corporate Service Company
Attn: Nationstar Mortgage, LLC.
1900 W. Littleton Boulevard
Littleton, Co 80120